1

2

3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

4

5

MacNEIL AUTOMOTIVE PRODUCTS
LIMITED d/b/a WEATHERTECH; and
MacNEIL IP LLC,

6

7

Plaintiffs,

8

v.

9

JINRONG (SH) AUTOMOTIVE
ACCESSORY DEVELOPMENT CO.,
LTD.; and RUI DAI,

10

11

Defendants.

C20-856 TSZ

ORDER

12        THIS MATTER comes before the Court on (i) a motion for summary judgment,

13   docket no. 91, brought by defendant Jinrong (SH) Automotive Accessory Development

14   Co., Ltd. ("Jinrong"); (ii) a motion for sanctions, including judgment against Jinrong,

15   docket no. 125, brought by plaintiffs MacNeil Automotive Products Limited d/b/a/

16   WeatherTech ("WeatherTech") and MacNeil IP LLC; (iii) Jinrong's motion for leave to

17   amend its answer, docket no. 133; and (iv) plaintiffs' motion for leave to take additional

18   depositions, docket no. 148.  Each side also moves to strike certain materials filed by the

19   opposition.  Having reviewed all papers filed in support of, and in opposition to, the

20   various motions, the Court enters the following order.

21   **<u>Background</u>**

22        MacNeil IP LLC owns U.S. Patent Nos. 8,382,186 (the "'186 Patent") and

23   8,833,834 (the "'834 Patent").  Am. Compl. at ¶¶ 8 & 10 (docket no. 33).  WeatherTech

ORDER - 1

is the exclusive licensee of the '186 and '834 Patents.  _Id._  The '186 Patent discloses a vehicle floor tray that is thermoformed from a polymer sheet of substantially uniform thickness.  Abstract of '186 Patent, Ex. 1 to Am. Compl. (docket no. 33-1).  The '834 Patent similarly discloses a vehicle floor tray, but one that is molded (instead of thermoformed) from a sheet of polymeric material of substantially uniform thickness.  Abstract of '834 Patent, Ex. 2 to Am. Compl. (docket no. 33-1).  WeatherTech manufactures and distributes vehicle floor mats throughout the United States.  _See_ Am. Compl. at ¶ 7 (docket no. 33).

In April 2019, WeatherTech and MacNeil IP LLC (collectively, "MacNeil") commenced this infringement action in the Northern District of Illinois against Jinrong and Rui Dai, _see_ Compl. (docket no. 1); Rui Dai has not yet appeared in this matter.  In January 2020, Jinrong moved for dismissal based on a lack of personal jurisdiction.  _See_ Def.'s Mot. (docket no. 34).  On May 13, 2020, Jinrong filed a responsive pleading admitting that the Northern District of Illinois had subject matter jurisdiction and stating that Jinrong did not contest personal jurisdiction.  Answer to ¶ 5 (docket no. 59).  On the same day, Jinrong withdrew its motion challenging personal jurisdiction and moved to transfer venue, citing as grounds its relationship with Yita LLC, its "exclusive retailer," which is a defendant in another infringement action brought by MacNeil, which had already been transferred to this district.  _See_ Def.'s Mot. (docket no. 60); Def.'s Memo. (docket no. 62).  In June 2020, MacNeil and Jinrong filed a stipulation to transfer venue to this district.  _See_ Jt. Stip. (docket no. 65).  In connection with this stipulation, Jinrong agreed (i) "not to object to personal jurisdiction," and (ii) the Western District of Washington "is a proper forum."  _See_ Ex. 1 to Schaum Decl. (docket no. 165-1).  The

case was transferred on June 3, 2020.  *See* Minute Entry (docket no. 66); Transfer Letter (docket no. 67).

In July 2020, Jinrong sought to stay this matter pending determination of four inter partes review ("IPR") proceedings pending before the U.S. Patent and Trademark Office, Patent Trial and Appeal Board ("PTAB") involving MacNeil IP LLC and Yita LLC.[1]  *See* Def.'s Mot. (docket no. 71).  The motion was denied because Jinrong is not a party to the IPR proceedings.  *See* Minute Order at ¶ 2 (docket no. 74).  Jinrong's subsequent motion for reconsideration, docket no. 75, and renewed motion to stay, docket no. 108, were also denied.  *See* Minute Order at ¶ 1 (docket no. 87); Minute Order at ¶ 1 (docket no. 115).

After reviewing the parties' Joint Status Report, docket no. 86, which indicated Jinrong anticipated filing a dispositive motion asserting that the accused infringement is beyond the territorial scope of United States patent law, the Court set a deadline for filing such motion.  *See* Minute Order at ¶ 2 (docket no. 87).  Jinrong timely filed a motion for summary judgment, docket no. 91, but the Court's consideration of the motion was delayed while the parties engaged in "jurisdictional" discovery and the Court resolved their related disputes.  *See* Minute Order (docket no. 103); Minute Order (docket no. 120).  Jinrong's motion for summary judgment is now fully briefed.  MacNeil not only opposes Jinrong's motion for summary judgment, it seeks sanctions against Jinrong

---

[1] The PTAB has since denied institution of two IPR matters, *see Yita LLC v. MacNeil IP LLC*, No. IPR2020-01138, 2021 WL 129365 (PTAB Jan. 13, 2021) ('186 Patent); *Yita LLC v. MacNeil IP LLC*, No. IPR2020-001140, 2021 WL 130464 (PTAB Jan. 13, 2021) ('834 Patent), but it has instituted trial with respect to the two other IPR petitions, *Yita LLC v. MacNeil IP LLC*, No. IPR2020-001139, 2021 WL 130633 (PTAB Jan. 13, 2021) ('186 Patent); *Yita LLC v. MacNeil IP LLC*, No. IPR202-001142, 2021 WL 136195 (PTAB Jan. 13, 2021) ('834 Patent).

1  for allegedly making false representations to the Court, spoliating evidence, and

2  otherwise failing to comply with discovery obligations.  Jinrong responds that MacNeil

3  lacks admissible evidence for its assertions and moves to strike certain materials on

4  hearsay grounds.  Before turning to the parties' respective accusations and motions to

5  strike, the Court must first assess its jurisdiction.

6  **Discussion**

7  **A.**     **Jurisdiction**

8          As measured under the "well-pleaded complaint" rule, subject matter jurisdiction

9  exists if the operative pleading establishes that either (i) federal patent law creates the

10  cause of action set forth therein, or (ii) the plaintiff's right to relief "necessarily depends

11  on resolution of a substantial question of federal patent law."  *Litecubes, LLC v. N. Light*

12  *Prods., Inc.*, 523 F.3d 1353, 1360 (Fed. Cir. 2008).  Subject matter jurisdiction does not

13  fail simply because the plaintiff might not be able to, or does not, succeed on the merits.

14  *Id.*

15          The Patent Act imposes liability for making, using, offering to sell, or selling any

16  patented invention, without authority, *within the United States*, or importing any patented

17  invention, without authority, into the United States.  35 U.S.C. § 271(a).  The territorial

18  scope set forth in § 271(a) is *not* jurisdictional, but rather an element of a claim for

19  infringement.  *See Litecubes*, 523 F.3d at 1360-66.  In other words, this Court has subject

20  matter jurisdiction to preside over a dispute concerning whether the acts of infringement

21  defined in § 271(a), one or more of which a defendant is alleged to have performed,

22  occurred within the United States.

23

ORDER - 4

1    The Patent Act also prohibits actively inducing the infringement of a patent.  35

2    U.S.C. § 271(b).  In contrast to § 271(a), § 271(b) has no territorial bounds, and an entity

3    may be liable for inducement even if its conduct occurred outside the United States.  *See*

4    *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012) (concluding that,

5    when "a foreign party, with the requisite knowledge and intent, employs extraterritorial

6    means to actively induce acts of direct infringement that occur within the United States,

7    such conduct is not categorically exempt from redress under § 271(b)"); *Semcon IP*

8    *Inc. v. Kyocera Corp.*, No. 2:18-CV-197, 2019 WL 1979930, at *3 (E.D. Tex. May 3,

9    2019) (observing that "[a] claim for indirect infringement has no territorial requirement").

10    To the extent Jinrong contends that the Court does not have subject matter

11    jurisdiction because the alleged infringement and/or inducement happened in China or

12    otherwise outside the boundaries of the United States, such argument lacks merit;

13    regardless of whether MacNeil can prove the elements of its patent infringement claims,

14    the Court has "federal question" subject matter jurisdiction.  In addition, to the extent

15    Jinrong, which is a Chinese company with a place of business in Shanghai, *see* Am.

16    Compl. at ¶ 3 (docket no. 33); Answer to ¶ 3 (docket no. 59), challenges the existence of

17    personal jurisdiction, it has waived such defense.  *See* Answer to ¶ 5 (docket no. 59)

18    ("Jinrong does not contest personal jurisdiction"); Ex. 1 to Schaum Decl. (docket

19    no. 165-1); *see also Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307

20    (Fed. Cir. 2005) (observing that the law of the Federal Circuit, not the regional circuit,

21    governs issues of personal jurisdiction in a patent infringement case, and that, because the

22    requirement of personal jurisdiction is "an individual right, it can, like other such rights,

23    be waived").  The Court has both subject matter and personal jurisdiction in this matter.

ORDER - 5

1

**B.    <u>Amendment of Jinrong's Answer</u>**

2

In its responsive pleading, Jinrong admitted that it

3

4

5

> designs, develops, and manufactures floor mats *including the floor mats*
> *accused of infringement in this case*. . . . [and] *designs* and manufactures
> floormats for the U.S. market, including the floormats accused of
> infringement in this case.

6

Answer to ¶ 3 (docket no. 59) (emphasis added).  In responding to Jinrong's summary

7

judgment motion and seeking sanctions against Jinrong, MacNeil quoted these

8

concessions.  <u>See</u> Plas.' Mot. at 4 (docket no. 125).  About two weeks later, Jinrong

9

sought to amend its answer to read:

10

11

> Jinrong admits that it designs, develops, and manufactures floor mats.
> Jinrong admits that it manufactures floormats for the U.S. market, including
> the floormats accused of infringement in this case.

12

Ex. A to Walters Decl. (docket no. 135 at 6-7); <u>see id.</u> (docket no. 135 at 10-11)

13

(proposing to also delete references to the allegedly infringing products and any design

14

efforts in response to ¶ 12 of the Amended Complaint).  Jinrong attributes the alleged

15

"errors" in its original responsive pleading to language or translation issues.

16

Given the liberal standard for revising pleadings, <u>see</u> Fed. R. Civ. P. 15(a)(2)

17

(indicating that leave to amend should be given "freely" when "justice so requires"),

18

MacNeil has not opposed amendment of Jinrong's answer, but MacNeil contends that

19

Jinrong's motion for leave to amend would be moot if the Court were to enter default

20

judgment against Jinrong, as MacNeil has requested.  This argument puts the proverbial

21

cart before the horse.  The Court will permit Jinrong to amend its responsive pleading,

22

but the Court will consider Jinrong's original answer in ruling on its motion for summary

23

1    judgment.  Moreover, the original responsive pleading will be admissible at trial as a

2    prior inconsistent statement or a statement of a party.  _See_ Fed. R. Evid. 613 & 801(d)(2).

3    **C.    Seeking Judgment**

4         Both sides seek judgment (Jinrong moves for summary judgment, while MacNeil

5    requests default judgment as a sanction), but neither side has made the requisite showing.

6    MacNeil has, however, demonstrated grounds for imposing non-dispositive sanctions

7    against Jinrong.

8         **1.    Jinrong's Motion for Summary Judgment**

9         In moving for summary judgment, Jinrong bears the burden of establishing the

10   absence of a genuine issue of material fact and entitlement to judgment as a matter of

11   law.  _See_ Fed. R. Civ. P. 56(a); _Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986).

12   Jinrong has not met this burden.  In response to Jinrong's motion for summary judgment,

13   MacNeil could have rested on Jinrong's admissions in its original answer that, to the

14   extent the patents-in-suit "read on" the accused vehicle floor mats (an issue not contested

15   in Jinrong's pending dispositive motion), Jinrong would be liable based on having

16   designed infringing products for export to the United States.  The Court concludes that,

17   given the concessions in Jinrong's responsive pleading, MacNeil was not required to

18   proffer evidence that Jinrong designs the allegedly infringing goods for export to the

19   United States, and that denial of Jinrong's summary judgment motion can be premised

20   solely on Jinrong's currently operative answer.  MacNeil, however, has done much more

21   than rely on Jinrong's responsive pleading, instead offering "affirmative evidence,"

22   which "is to be believed" and from which all "justifiable inferences" must be drawn in

23   MacNeil's favor.  _See Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 255, 257 (1986).

ORDER - 7

The factual disputes raised by MacNeil's submissions, which are summarized in the next few paragraphs, also preclude summary judgment.

Jinrong has taken the position that, if any acts of direct infringement cognizable under U.S. patent law have occurred, Shanghai Shengtian Industrial Development Company, Ltd. ("Shengtian") is responsible,[2] and that Jinrong cannot be held liable for indirect infringement because it did not knowingly induce a third party to infringe the patents-in-suit.[3]  MacNeil responds to Jinrong's attempt to pass the blame to Shengtian by providing the following information.  Jinrong and Shengtian were previously owned by the same individuals, namely Chao ("Kevin") Lin, Jinguo Lin, and Juan Zhu.  _See_ Def.'s Resp. to Request for Admission Nos. 4 & 6, Ex. 3 to Schaum Decl. (docket

---

[2] Jinrong has indicated in response to certain discovery requests that it did not design the accused products and that "the manufacturing of all accused products is based on specifications provided by Shengtian."  Resp. to Interrog. No. 9, Ex. 3 to Schaum Decl. (docket no. 126-3).  Jinrong has also represented that listings under Jinrong's name of the accused products on Alibaba.com, an online wholesale marketplace, were created by an employee of Shengtian.  Resp. to Interrog. No. 3 (docket no. 126-3); _see also_ Ex. 3 to Am. Compl. (docket no. 33-1) (sample Alibaba.com listings).  According to Jinrong, Shengtian sells to a third party in China certain vehicle floor mats branded as YITA MOTOR and OEDRO, which are then distributed by Yita LLC in the United States.  _See_ Resp. to Interrog. No. 18 (docket no. 126-3).  Shengtian previously sold floor trays, which were manufactured by Jinrong and branded as PERFIT (or PERFIT LINER), to a third party in China who exported them to the United States for distribution by Titanium Plus Autoparts, Inc. ("Titanium").  _See_ Resp. to Interrog. No. 17 (docket no. 126-3).  Jinrong denies having any direct business dealings with either Yita LLC or Titanium relating to the accused products, and has stated that it merely delivers packaged parts (with packaging and printed inserts supplied by Shengtian) to other parties in China pursuant to Shengtian's instructions.  _See_ Resp. to Interrog. Nos. 9, 17, & 18 (docket no. 126-3); _see also_ Wei Dep. at 37:6-20, Ex. 10 to Schaum Decl. (docket no. 165-10) (indicating that Jinrong sold products to Shengtian, which then sold them to Titanium and Yita).

[3] "To prove inducement of infringement, the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement."  _Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc._, 843 F.3d 1315, 1332 (Fed. Cir. 2016).

no. 126-3).   Jinguo Lin and Juan Zhu are Kevin Lin's father and mother, respectively;

Kevin Lin recently changed his name to Hanming Lin.  *See* J. Lin Dep. at 17:23-18:6,

19:15-20, 86:16-20, Ex. 4 to Schaum Decl. (docket no. 165-4); Plas.' Resp. at 4 & n.5

(docket no. 164); *see also* Schaum Decl. at ¶ 11 (docket no. 165).   In November 2017,

Shengtian was sold to Ms. Zhu's third cousin (Zhen Zhu) and her daughter (Danqing

Jiang), who reside in the Fujian province of China.  J. Lin Dep. at 103:8-13, 105:14-19,

128:13-129:2 (docket no. 165-4); Zhu Dep. at 33:4-14, 35:19-39:18, Ex. 28 to Schaum

Decl. (docket no. 165-28); *see* Peng Dep. at 30:8-12, Ex. 8 to Schaum Decl. (docket

no. 155-8); Def's Resp. to Interrog. No. 15 (docket no. 126-3)  The Fujian province is

more than 370 miles from Shanghai, which is where Shengtian's business license[4] and its

foreign trade operator registration form (or export license) indicate the company is

located.  *See* Exs. B & C to Wei Decl. (docket no. 93).

The export license names as Shengtian's "legal representative" none other than

"Lin Chao" (or Kevin Lin), one of Jinrong's three shareholders.  Ex. C to Wei Decl.

---

[4] Shengtian's business license sets forth an address of Room 303-9, Building 33, No. 680 Guiping Road, Xuhui District, Shanghai.  *See* Ex. B to Wei Decl. (docket no. 93).  Jinrong's business license shows a similar address:  Room 303-8, Building 33, No. 680 Guiping Road, Xuhui District, Shangahi.  *See* Ex. A to Wei Decl. (docket no. 93).  This information seems consistent with Jinrong's admission that it and Shengtian have registered offices in the same building.  Resp. to Request for Admission No. 2 (docket no. 126-3).  Jie Peng, who is listed on Shengtian's business license as its "legal representative," *see* Ex. B to Wei Decl. (docket no. 93), testified that Shengtian has never had a location that was not on Guiping Road.  Peng Dep. at 27:15-17 & 30:3-5 (docket no. 155-8).  An investigator hired by MacNeil, however, visited Building 33, No. 680 Guiping Road in the Xuhui District of Shanghai and found no rooms numbered 303-8 or 303-9.  Ma Decl. at ¶¶ 3-4 (docket nos. 156 & 167).  Moreover, Shengtian was not listed on the building's directory.  *Id.* at ¶ 5 & Ex. C.  The investigator also looked (unsuccessfully) for Shengtian on the twentieth floor of Building B, Caohejing International Business Center, No. 31 Guiping Road in Shanghai, which was an alternative address provided by Mr. Peng.  *Id.* at ¶ 6; *see* Peng Dep. at 25:18-26:24 (docket no. 155-8).

1    (docket no. 93).  The export license lists two addresses, one on Guiping Road, *see supra*

2    note 4, and one on Bao'an Highway.  Ex. C to Wei Decl. (docket no. 93).  The latter

3    address (No. 58, Lane 2400, Bao'an (BaoAn) Highway (or Road), Jiading (or Baoshan)

4    District, Shanghai) also appears on a purchase order, three invoices, a bill of lading, and

5    an air shipment form attached to the declaration of Jinrong's project manager, Wei Wei.

6    *See* Exs. D, G, J, K, L, & Q to Wei Decl. (docket no. 93).  MacNeil's investigator found

7    Shengtian at this approximately 1.6-acre facility.  *See* Ma Decl. at ¶ 8 (docket nos. 156 &

8    167).  What the investigator further discovered is that Jinrong is also at this location.  *Id.*

9    at ¶¶ 9-10 & Exs. G & H.  A security guard indicated to the investigator that Jinrong and

10   Shengtian "are the same company and owned by the same person." *Id.* at ¶ 11.[5]  Given

11   the "justifiable inferences" that may be drawn from the significant distance between

12

13   _____

14   [5] Jinrong's motion, *see* Reply at 11 nn.8 & 9 (docket no. 177), to strike Paragraphs 5, 6, and 11
     of MacNeil's investigator's twice-filed declaration, docket nos. 156 & 167, is GRANTED in part
15   and DENIED in part.  The investigator's statements in Paragraphs 5 and 6 concerning what an
     unidentified "delivery person" said about whether Shengtian had offices in the buildings on
16   Guiping Road are STRICKEN as hearsay.  *See* Fed. R. Evid. 802.  Jinrong's motion to strike is
     otherwise DENIED.  Staff of the companies managing the buildings on Guiping Road would
17   have the requisite personal knowledge to testify about whether Shengtian was located on the
     premises, and to the extent required, MacNeil could presumably produce the appropriate
     witnesses to testify at trial or by perpetuation deposition.  Similarly, the security guard at the site
18   on Bao'an Highway would have personal knowledge regarding which companies occupy the
     facility, and MacNeil could likely identify him from the photograph taken by the investigator and
19   arrange for his testimony to be provided in an admissible form.  *See* Fed. R. Civ. P. 56(c)(4).
     In an attempt to refute the security guard's statement, Jinrong explains that the signage for
20   Shengtian located at Jinrong's front gate exists merely "to facilitate pick-up of Shengtian's goods
     manufactured by Jinrong."  Reply at 12 (docket no. 177) (citing Wei Decl. at ¶ 2 (docket
21   no. 178)).  This assertion is inconsistent with Shengtian's export license, which identifies the
     Bao'an Highway facility as Shengtian's "[p]lace of business" and "[b]usiness premises," as well
22   as with the purchase order, invoices, bill of lading, and air shipment form previously submitted
     by Jinrong.  *See* Exs. C, D, G, J, K, L, & Q to Wei Decl. (docket no. 93).  Moreover, Mr. Wei's
23   declaration on the subject does not trump the contradictory evidence or justifiable inferences, but
     rather just demonstrates a factual issue for trial.

ORDER - 10

1    Ms. Zhu's relatives' home and the area where Shengtian and Jinrong are apparently

2    co-located, as well as Kevin Lin's designation as Shengtian's "legal representative,"

3    MacNeil has raised triable issues concerning whether Jinrong and/or one or more of its

4    shareholders operates Shengtian or uses Shengtian as an alter ego.

5    　　　　MacNeil has also presented evidence that, contrary to Jinrong's representations,

6    Kevin Lin and his father interacted directly with employees of Titanium, a California-

7    based entity, before Titanium began selling vehicle floor mats manufactured by Jinrong.

8    According to Bin Xiao and Tony Chiu, who worked for Titanium, they met Kevin Lin at

9    a trade show in Las Vegas in 2017.[6]  Xiao Dep. at 23:25-24:8, 35:9-36:3, Ex. 25 to

10   Schaum Decl. (docket no. 165-25); Chiu Dep. at 9:12-17, Ex. 26 to Schaum Decl. (docket

11   no. 165-26); _see also_ Zhu Dep. at 21:14-20 & 23:21-24 (docket no. 165-28).  Mr. Xiao

12   has testified that, at the trade show, they discussed with Kevin Lin possibly selling the

13   liner that Jinrong had developed.  Xiao Dep. at 35:19-36:3 (docket no. 165-25).  Shortly

14   thereafter, Mr. Chiu got the idea to use the trademark PERFIT LINER, and an application

15   to register the trademark was filed with the United States Patent and Trademark Office

16   ("PTO"), listing as owners Bin Xiao, Tony Chiu, Chao (Kevin) Lin, and Jinguo Lin.[7]  _See_

17   _____

18   [6] Jinrong participated in the Specialty Equipment Market Association ("SEMA") trade show in
     2015, 2016, and 2018, and the Automotive Aftermarket Products Expo ("AAPEX") trade show
19   in 2017; both trade shows are held annually, around Halloween time, in Las Vegas, Nevada.  _See_
     Schaum Decl. at ¶¶ 2, 14, & 15 and Exs. 2, 3, 11, & 12 (docket nos. 165, 165-2, 165-3, 165-11,
20   & 165-12).  The Court draws no inference from Jinrong's presence at these trade shows; whether
     Jinrong exhibited the accused products and what communications Jinrong had with others during
21   the trade shows are not reflected in the record.  Jinrong's related motion to strike, _see_ Reply at 7
     n.4 (docket no. 177), is therefore DENIED as moot.

22   [7] The application ripened into U.S. Registration No. 5,613,505, which was issued by the PTO on
     November 20, 2018.  _See_ Ex. A to Schaum Decl. (docket no. 97-1).  During the application
23   process, emails were circulated among Messrs. Xiao and Chiu, Kevin Lin, and the attorney

Xiao Dep. at 56:4-58:13, Ex. 4 to Schaum Decl. (docket no. 137-4).  In December 2017,

Messrs. Xiao and Chiu traveled to China, toured Jinrong's factory in Shanghai, and met

with both Kevin Lin and his father Jinguo Lin.  *Id.* at 65:5-68:12.  Messrs. Xiao and Chiu

formed Perfit Liner Inc., which bought vehicle floor mats from Jinrong and sold them to

Titanium for distribution through its Amazon account.  *Id.* at 20:24-21:16, 59:19-60:11,

& 104:21-105:10; *see also* Exs. J & K to Wei Decl. (docket no. 93) (attaching invoices to

Perfit Liner Inc. from Shengtian dated Feb. 1, 2018, and Mar. 23, 2018); Chiu Dep. at

50:10-17, Ex. 5 to Schaum Decl. (docket no. 137-5) (when asked about Shengtian,

Mr. Chiu indicated, "to us it's – Jinrong, you know, that's all we order from").  MacNeil

has identified genuine disputes of material fact concerning whether Jinrong took any

affirmative acts, either within or outside of the United States, that induced Perfit Liner

Inc. and/or Titanium to engage in direct infringement of the patents-in-suit.[8]

---

handling the matter.  *See* Ex. 1 to Schaum Decl. (docket no. 126-1).  In one of these emails, all
four applicants were listed for the attorney, and in another email, Jinguo Lin's nationality was
provided.  *Id.*  These emails, dated between December 12 and 21, 2017, were "cc'd" to Kevin
Lin at the following address:  linchao@jinronggroup.cn.  *Id.*  Kevin Lin has denied seeing these
particular messages or authorizing a trademark application in his or his father's name.  *See* Lin
Decl. at ¶¶ 3-4 (docket no. 140).  Mr. Lin has indicated that he does not use email, and that his
assistant monitors his account and responds on his behalf.  *Id.* at ¶ 3.  Mr. Lin has not, however,
suggested that the emails concerning the PERFIT LINER trademark application were sent to an
invalid address; indeed, about six months later, in June 2018, Mr. Xiao received an email from
linchao@jinronggroup.cn, in response to his message on a different topic.  *See* Ex. 2 to Schaum
Decl. (docket no. 126-2).

[8] Jinrong appears to argue that a settlement reached among MacNeil, Perfit Liner Inc., and
Titanium renders immaterial the factual questions regarding whether Kevin Lin and his father
had direct interactions with U.S. distributors.  *See* Supp. Br. at 6-7 (docket no. 141).  Jinrong
relies on jurisprudence barring MacNeil from "double dipping" or collecting additional damages
related to infringement for which it has been compensated.  *Id.*  MacNeil, however, does not
offer this evidence for the purpose of obtaining from Jinrong more royalties relating to the
PERFIT LINER products, *see* Pls.' Resp. at 15 n.12 (docket no. 164), but rather to cast doubt on
Jinrong's denial of direct business dealings with U.S. distributors.  The testimony presented by

In June 2018, after WeatherTech began ordering PERFIT LINER products from Amazon, Messrs. Xiao and Chiu grew concerned about possible patent infringement issues, *see* Chiu Dep. at 43:17-44:14 (docket no. 137-5), and Mr. Xiao sent the following email to Kevin Lin:

> Per what we discussed over the phone, the attached is the sales statement for the mats for the last 30 days. . . .
>
> Please consider the several solutions discussed over the phone since we are facing the weathertech [sic] issue now.  As for the sales, we will suspend for a week.  Once you give me the update this week, we will then discuss.

Ex. 2 to Schaum Decl. (docket no. 126-2).[9]  Roughly nine minutes later, Kevin Lin replied simply, "Received." *Id.*  The Court concludes that MacNeil has raised questions of fact concerning whether Jinrong knowingly[10] induced direct infringement of the patents-in-suit by third parties.

---

MacNeil has put at issue the credibility of Jinrong's shareholders and other witnesses, which must be evaluated by the trier of fact.

[9] Whether this correspondence occurred in English or Chinese (Mandarin) is unclear.  *Compare* Ex. 2 to Schaum Decl. (docket no. 126-2) (in English) *with* Ex. D to Schaum Decl. (docket no. 149-4 at 26) (in Chinese).  To the extent the original communication was in Chinese, the English version is not a certified translation; however, the reference to WeatherTech appears in English (*i.e.*, in Roman or Latin letters) in both copies.

[10] According to Wei Wei, Jinrong was not aware of the patents-in-suit until after this litigation commenced in April 2019.  *See* Wei Decl. at ¶ 27 (docket no. 93).  Kevin Lin, however, knew about a related patent, namely U.S. Patent No. 7,316,847 (the "'847 Patent"), on or before June 23, 2016, having cited it in an application for a Chinese patent.  *See* Ex. B to Schaum Decl. (docket no. 97-2 at 11 & 24).  Both of the patents-in-suit stem from continuations of applications that were divisions of the application that ripened into the '847 Patent.  *See* Exs. 1 & 2 to Am. Compl. (docket no. 33-1).  Moreover, according to Tony Chiu, when asked in June 2018 about whether Jinrong had any patent problems, Kevin Lin indicated that "they discussed . . . with the US attorney already," and "[t]wo say no problem, one, maybe, up and down," but "they are very confident, they got no problem with patent."  Chiu Dep. at 44:5-25 (docket no. 137-5).  This evidence suggests that, by June 2018, at the latest, Jinrong was on notice (and had actually consulted with a lawyer) about patent infringement issues.  On November 12, 2018, Shengtian entered into an agreement with Hong Kong Yintatech Networks Co., Ltd., an affiliate of Yita

1        **2.      MacNeil's Motion for Sanctions**

2        The decision to sanction a litigant is not unique to patent law, and thus, regional

3   circuit law applies.  *See* *United Constr. Prods., Inc. v. Tile Tech, Inc.*, 843 F.3d 1363,

4   1367-68 (Fed. Cir. 2016).  The Court has both rule-based and inherent authority to

5   impose sanctions for litigation misconduct.  *See* *Fink v. Gomez*, 239 F.3d 989, 991 (9th

6   Cir. 2001).[11]  MacNeil seeks sanctions under both Federal Rule of Civil Procedure 37 and

7   the Court's inherent authority.

8        **a.      Rule 37**

9        Rule 37 authorizes sanctions for (i) failure to comply with a court order regarding

10  a deposition or directing a party to provide or permit discovery, (ii) failure to disclose

11  information or identify a witness and supplement as required by Rules 26(a) or 26(e),

12  (iii) failure to admit matters later proven true, (iv) failure by a party to attend its own

13  deposition, serve answers to interrogatories, or respond to a request for inspection,

14  (v) failure to preserve electronically stored information, and/or (vi) failure by a party or

15  its attorney to participate in good faith in framing a discovery plan.  *See* Fed. R. Civ.

16  _____

17  LLC.  *See* Schaum Decl. at ¶ 29 (docket no. 165); *see also* Def.'s Reply at 7 (docket no. 177)
    (erroneously citing Ex. A to Wei Decl. (docket no. 138 at 9-21), which is, according to Mr. Wei,
18  an employment agreement with He Li, and not the distribution agreement referenced in the
    Reply).  Vehicle floor mats branded as OEDRO and YITA MOTOR account for 95% of the
19  accused products.  Wei Decl. at ¶ 2 (docket no. 119).  Given the timing of events, MacNeil
    speculates that Jinrong and Yita LLC decided to partner with each other as a result of the SEMA
20  trade show held October 30 through November 1, 2018.  Whether MacNeil can prove this
    hypothesis remains to be seen, but for now, the Court concludes that what Jinrong knew and
21  when constitute factual issues precluding summary judgment.

    [11] In *Fink*, the Ninth Circuit cited Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 as
22  sources of a court's authority to sanction parties and/or their lawyers.  *See* *Fink*, 239 F.3d at 991.
    Although MacNeil has referenced *Fink* in its motion for sanctions, MacNeil does not rely on
23  either Rule 11 or 28 U.S.C. § 1927.

P. 37(b)–(f).  MacNeil's motion does not make entirely clear which, if any, of these

grounds for sanctions applies.  In its motion, MacNeil mentions Rules 37(c)(1) (failure to

disclose or supplement) and 37(c)(2) (failure to admit), but it does not thereafter specify

exactly what Jinrong failed to disclose or admit.  *See* Mot. at 7 (docket no. 125).  In

its reply, MacNeil for the first time references Rule 37(b)(2) (failure to comply with a

discovery order) and alludes to the spoliation of certain evidence, namely Alibaba.com

account materials, sanctions for which would be governed by Rule 37(e).[12]  Reply at 1-2

(docket no. 182).

---

[12] The Court is not persuaded that the Alibaba.com evidence has been "lost" and "cannot be restored or replaced through additional discovery."  Fed. R. Civ. P. 37(e).  Jinrong has stated that the Alibaba.com listings at issue (which display Jinrong's name in connection with depictions and prices of floor mats for various U.S. vehicles, *see* Ex. 3 to Am. Compl. (docket no. 33-1)) were created in December 2017 by He ("Holly") Li, then an employee of Shengtian.  Resp. to Interrog. No. 3, Ex. 3 to Schaum Decl. (docket no. 126-3).  Ms. Li's employment began in May 2016 and ended in June 2020.  *Id.*; *see also* Wei Decl. at ¶ 5 & Exs. A & B (no English translation provided) (docket no. 138).  The Alibaba.com account is now allegedly "locked" and cannot be accessed by Shengtian or Jinrong.  Supp. Resp. to Interrog. No. 3 (docket no. 126-3).  Mr. Wei represents that he, on behalf of Jinrong, sent an email to Shengtian on March 14, 2021, demanding assistance in restoring access to the Alibaba.com account.  Wei Decl. at ¶ 16 & Ex. C (docket no. 138).  Interestingly, this email was "cc'd" to Kevin Lin at linchao@jinronggroup.cn, the address that Mr. Lin claims not to monitor.  *See id.* at Ex. C; *see supra* note 7.  Mr. Wei also indicates that he has attempted to connect with Holly Li, but to no avail.  *See id.* at ¶ 17 & Ex. D (email and text messages for which no English translation has been provided).  MacNeil asserts that Jinrong's efforts are inadequate.  The Court agrees, but the record does not support a conclusion that the information in the Alibaba.com account has been destroyed; rather, Jinrong simply denies having the requisite password or other security credentials to gain access to the account.  Given that the account is in Jinrong's name (*see* Ex. 3 to Am. Compl. (docket no. 33-1) (showing a webpage address beginning with "https://jinronggroup.en.alibaba.com")), Jinrong could presumably seek help from Alibaba.com to regain access.  The Minute Order entered March 10, 2021, docket no. 120, made clear that the Court expected Jinrong to do so.  *See* Minute Order at ¶ 1(h) ("If access cannot be restored by April 15, 2021, then Jinrong and its attorney shall file declarations under oath concerning the efforts made and *the responses received from Alibaba.com's webmaster or other personnel*." (emphasis added)).  If Jinrong persists in failing to engage in the requisite good faith efforts to produce the requested Alibaba.com records, the Court will consider appropriate sanctions, including, but not limited to, an adverse-inference jury instruction.

1    In a surreply, Jinrong moves to strike arguments not raised in, and evidence not

2    presented contemporaneously with, MacNeil's motion for sanctions.  *See* Surreply at 1-2

3    (docket no. 184).  Jinrong further contends that, in seeking sanctions pursuant to

4    Rule 37(b)(2), MacNeil cannot rely on the Court's Minute Order entered on March 10,

5    2021, docket no. 120, because the deadlines set forth therein for complying with certain

6    discovery requests had not yet expired when MacNeil filed its motion for sanctions.

7    Jinrong's motion to strike, docket no. 184, is GRANTED in part as to MacNeil's request

8    for sanctions based on failure to comply with a discovery order and/or spoliation of

9    evidence.  Jinrong's motion to strike is otherwise DENIED.

## b.    **Inherent Authority**

11    Although MacNeil touched upon Rule 37 standards in its motion for sanctions,

12    MacNeil principally invokes the Court's inherent authority.  Earlier this year, the Ninth

13    Circuit provided a primer concerning the framework for imposing inherent-authority-

14    based sanctions.  *See Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088-90

15    (9th Cir. 2021).  In doing so, the Ninth Circuit cautioned that, "[b]ecause of their very

16    potency, inherent powers must be exercised with restraint and discretion."  *Id.* at 1088

17    (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)).  Individuals subject to

18    sanctions are afforded procedural protections, which vary depending on the violation and

19    the type and magnitude of the sanction.  *Id.* at 1088-89.  When only civil-type procedures

20    are used, the sanctions "may go no further than to redress the wronged party 'for losses

21    sustained' and may not impose any additional consequence as punishment for the

22    sanctioned party's misbehavior."  *Id.* at 1089.  To penalize or punish litigation

23    misconduct, the Court must offer criminal-type guarantees, including application of a

1    "beyond a reasonable doubt" standard of proof, a jury trial, the assistance of counsel, a

2    presumption of innocence, and the privilege against self-incrimination.  _Id._ (citing _inter_

3    _alia_ _Goodyear Tire & Rubber Co. v. Haeger_, 137 S. Ct. 1178, 1186 (2017)).

4         MacNeil has not suggested that the Court apply the level of formality necessary to

5    dispense punitive remedies, and thus, the Court will consider only compensatory

6    sanctions, which must be "'calibrated to the damages caused' by the sanctionable conduct

7    on which [they are] based."  _Id._  The Court must be governed by the "but for" standard,

8    inquiring whether any harm warranting compensatory relief would have arisen had the

9    sanctionable misbehavior not occurred.  _See id._ at 1089-90.  Moreover, to impose

10   sanctions pursuant to its inherent authority, the Court must find either a willful violation

11   of a court order or bad faith.  _Id._ at 1090.  Willfulness does not require proof of intent or

12   improper motive; rather, the Court must merely conclude that the sanctioned party acted

13   deliberately.  _Id._  Bad faith, on the other hand, means conduct done "vexatiously,

14   wantonly, or for oppressive reasons," with bad intent or for improper purpose.  _Id._  For

15   the reasons discussed earlier, MacNeil cannot establish that Jinrong engaged in a willful

16   violation of a court order, and thus, to show that sanctions are warranted, MacNeil must

17   prove Jinrong acted in bad faith.

18                          **i.      Request for Default Judgment**

19        In asking for default judgment against Jinrong, MacNeil accuses Jinrong of

20   (i) making false representations to the Court about Jinrong's involvement in the PERFIT

21   LINER trademark application, and (ii) falsely denying knowledge of WeatherTech

22

23

ORDER - 17

products,[13] which are marked as required by 35 U.S.C. § 287(a) to provide notice of the associated patent or patents.  Although MacNeil was entitled to "justifiable inferences" from the evidence for purposes of opposing Jinrong's summary judgment motion, it is not given the same benefit in seeking sanctions against Jinrong.  *See* *In re Crystal Cathedral Ministries*, No. 2:12-bk-15665, 2020 WL 1649619, at *32 (Bankr. C.D. Cal. Mar. 31, 2020) ("The Ninth Circuit has held that the burden of showing bad faith is on the party claiming bad faith, but it has not decided the standard of proof that applies, i.e., whether a preponderance of the evidence or clear and convincing evidence is sufficient to support a finding of bad faith."); *see also* *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010) (declining to address whether the burden of proof for sanctions is "clear and convincing evidence").  Whether Jinrong's statements were untrue when made (and, if so, interposed in bad faith) involve factual questions, and the Court cannot conclude that MacNeil has met its burden of proof to support related sanctions, regardless of which standard governs.

Even if MacNeil had shown the requisite bad faith on the part of Jinrong, the Court would not enter default judgment as a sanction.  Before granting dispositive relief

---

[13] In asserting that Jinrong had actually studied WeatherTech's vehicle floor mats and therefore had constructive notice of the patents-in-suit, MacNeil relies on a spreadsheet produced by Jinrong in discovery that correlates PERFIT LINER products with WeatherTech item numbers.  *See* Mot. at 5 (docket no. 125) (citing Ex. 4 to Schaum Decl. (docket no. 129-1)).  In response, Jinrong contends that this spreadsheet was created by Jack Chiu, the younger brother of Tony Chiu, who worked for Titanium and was a principal of Perfit Liner Inc., and was sent to Holly Li, an employee of Shengtian.  *See* Resp. at 11-12 (docket no. 150) (citing Ex. I to Walters Decl. (docket no. 151 at 103)).  The spreadsheet, however, contains no identifiers, and the "properties" of the document, which are cited by Jinrong, indicate only the author, but not the recipient or recipients of the spreadsheet.  Neither side's evidence sheds light on whether Jinrong participated in generating or circulating the spreadsheet at issue or knew about it and, if so, when.

1   as a sanction, the Court must consider the following factors:  (i) the public's interest in

2   expeditious resolution of litigation; (ii) the Court's need to manage its docket; (iii) the

3   risk of prejudice to the party seeking sanctions; (iv) the public policy favoring disposition

4   of cases on their merits; and (v) the availability of less drastic sanctions.  _United Constr._,

5   843 F.3d at 1368 (citing _Malone v. U.S. Postal Serv._, 833 F.2d 128, 130 (9th Cir. 1987));

6   _see also_ _Henry v. Gill Indus., Inc._, 983 F.2d 943, 948 (9th Cir. 1993).  The Court is not

7   persuaded that any of the applicable factors weigh in favor of the harsh remedy sought by

8   MacNeil.[14]

9   ## ii.    **Additional Depositions**

10          Based on declarations filed by Hui Lin and Juan Zhu (Kevin Lin's sister and

11   mother, respectively), MacNeil opted to take their depositions, only to learn that Ms. Lin

12   does not have the knowledge she averred under penalty of perjury,[15] and that Ms. Zhu's

13   _____

14   [14] Jinrong has, on three occasions, sought a stay of this matter while the PTAB decides the
     validity of the patents-in-suit in light of obviousness challenges.  Given Jinrong's assertion that
15   the allegedly extraterritorial nature of its conduct was dispositive, the Court denied those
     requests.  The notion that Jinrong is entitled to an early exit in this matter having now been
16   rejected, the factors of expeditious resolution and docket management do not play a role in the
     sanctions analysis because, at this point, the most efficient use of judicial resources is to await
     the PTAB's rulings (and the Federal Circuit's opinion in any appeal).  The Court also cannot
17   conclude that MacNeil would be prejudiced unless default judgment is entered.  MacNeil IP LLC
     must defend its patents in the IPRs initiated by Yita LLC regardless of what happens in this case,
18   and a default judgment declaring that Jinrong has infringed the patents-in-suit would be of no use
     to MacNeil if the patents are declared invalid by the PTAB.  Moreover, although Jinrong's
19   litigation tactics and alleged recalcitrance might have caused delay, they do not appear to have
     impacted MacNeil's "ability to go to trial" or interfered with "the rightful decision of the case."
20   _See_ _Adriana Int'l Corp. v. Thoeren_, 913 F.2d 1406, 1412-13 (9th Cir. 1990).  Finally, the public
     policy favoring disposition of matters on the merits and the availability of less harsh measures tip
21   the scale sharply against imposition of default judgment as a sanction.

22   [15] On December 16, 2019, Hui Lin represented that she was then employed at Jinrong as the
     procurement director and had knowledge of Jinrong's operations; this declaration was filed three
23   separate times in this matter.  H. Lin Decl. at ¶ 2 (docket nos. 29-4, 35-4, & 62 at 21-22).  When
     deposed, Ms. Lin denied ever being employed by Jinrong, although she did help her parents book

1   ability to recall information was suspect.[16]  MacNeil was also unsatisfied after deposing

2   Jinrong's co-owner and former general manager, Jinguo Lin, and Jinrong's Rule 30(b)(6)

3   designee, Wei Wei; according to MacNeil, neither of these witnesses appeared to know

4   about Jinrong's manufacturing process or any technical information relating to the

5   accused products.  *See* Mot. at 5-6 (docket no. 148).  Having exhausted the ten (10)

6   depositions envisioned by Federal Rule of Civil Procedure 30(a)(2)(A)(i), MacNeil asks

7   the Court to approve two more depositions, namely of Jinrong's Director of Engineering,

8

9

10

_____

11

12   hotels for customers.  H. Lin Dep. at 13:5-11, 15:6-9, 22:15-19, 23:2-5, Ex. A to Schaum Decl. (docket no. 149-1).

13   [16] On April 29, 2021, Juan Zhu declared under oath that, "[o]ver the years, including during 2017 through 2019, [she] assisted in running the finances of Jinrong and other companies that are or

14   were majority owned by Jinguo Lin."  Zhu Decl. at ¶ 2 (docket no. 146).  Ms. Zhu further avowed that, pursuant to an agreement reached between Shengtian's former and current shareholders, any payments for orders placed prior to the sale of the company would be paid to

15   the former shareholders' account.  *Id.* at ¶ 4.  She also indicated that an invoice from Shengtian dated August 10, 2018, showing an account number in her name, was consistent with this

16   arrangement.  *Id.*  Despite having a majority (60%) share in Jinrong, *see* J. Lin Dep. at 17:25-18:6, Ex. 4 to Schaum Decl. (docket no. 165-4), when deposed, Ms. Zhu testified that she could

17   not recall how many shares she owned "because [she didn't] care much about it" and that she "was never really part of" or worked for Jinrong, which she considered to be her husband's, and

18   now her son's, company.  *See* Zhu Dep. at 12:9-12, 16:19-17:2, & 25:12-15, Ex. B to Schaum Decl. (docket no. 149-2).  During her deposition, in response to an inquiry about whether she had

19   any understanding of the relationship between Jinrong and Shengtian, Ms. Zhu answered, "No." *Id.* at 17:19-22 (docket no. 149-2); *see id.* at 16:2-3 ("It is all handled by my husband.").  When

20   asked about the agreement referenced in her declaration and its nature, Ms. Zhu replied, "I don't know."  *Id.* at 53:23-54:2.  When shown the invoice discussed in her declaration, Ms. Zhu

21   initially stated, "I have never seen this document before," *id.* at 54:16-18, but after a two-hour break (while her daughter was being deposed) and upon being recalled by Jinrong's attorney, she

22   later indicated that, she had checked with Wei Wei and her husband "[a]t the time," and was informed it was a payment for an order placed before Shengtian was sold, *see id.* at 55:11-56:15 & 58:5-59:2.  The invoice at issue, however, was dated over nine months after Shengtian's

23   management allegedly switched hands.

Zhonghuang Yan, who has been the head of the manufacturing department for more than ten years, and of Kevin Lin's assistant, Tong Chen.[17]

The Court authorizes MacNeil to take these two, as well as another nine, depositions, for a total of eleven more depositions.  The Court's ruling is based on both (i) a finding of bad faith on the part of Jinrong in connection with the declaration of Hui Lin, and (ii) the standards set forth in Rules 26(b)(1) and (2), _see_ Fed. R. Civ. P. 30(a)(2).  When asked by Jinrong's own attorney why she signed the declaration falsely indicating that she was employed by Jinrong, Ms. Lin explained that she did so because she was in the United States at the time, Kevin Lin had been unable to travel because of his recent name change and the resulting lack of a valid passport, and "the company asked [her] to make these statements on [its] behalf."  H. Lin Dep. at 29:13-23, Ex. A to Schaum Decl. (docket no. 149-1).  In response to Jinrong's counsel's questions, and over the objections of MacNeil's lawyer, Ms. Lin repeatedly asserted that she "verified" the contents of her declaration with her brother.  _Id._ at 25:23-29:12.

---

[17] MacNeil wishes to depose Tong Chen in an effort to develop proof of a discovery violation. According to MacNeil, after receiving search terms from Kevin Lin, Ms. Chen found emails between Messrs. Lin and Xiao that were responsive to MacNeil's discovery requests and forwarded them to Wei Wei in January 2021, but Jinrong did not produce the emails until the end of April 2021, after they had already been obtained by MacNeil from Messrs. Xiao and Chiu. _See_ Mot. at 7-8 (docket no. 148).  MacNeil accuses Mr. Wei of falsely stating during the interim, on March 3, 2021, that "he had looked for these documents and could not find them." _Id._ at 8; _compare_ Wei Decl. at ¶ 5 (docket no. 119) ("Jinrong has searched for (including asking Shengtian for documents) and produced all communications found between Jinrong and Titanium Autoparts Plus relating to the accused products.").  MacNeil also expresses concern over what additional materials Jinrong has withheld, observing that, with respect to emails to and from Kevin Lin's address, Jinrong's privilege log lists far more emails than have been produced. _See_ Mot. at 8 (docket no. 148) (citing Exs. D & E to Schaum Decl. (docket nos. 149-4 & 149-5)). Neither the veracity of Mr. Wei's declaration nor whether Jinrong has appropriately invoked a privilege are issues ripe for the Court's review.

ORDER - 21

1    The Court finds that (i) Hui Lin misrepresented her role at Jinrong, (ii) Ms. Lin

2   falsely stated that she had personal knowledge of the facts set forth in her declaration,

3   (iii) Kevin Lin knew about and in fact solicited the deceit perpetrated by Ms. Lin, and

4   (iv) the actions of Hui Lin and Kevin Lin were done in bad faith, for the improper

5   purpose of securing a dismissal or transfer of venue in this matter on the basis of a

6   declaration that Kevin Lin was, for whatever reason, unable to himself execute.  *See*

7   H. Lin Decl. (docket nos. 29-4 & 35-4) (appended to Jinrong's memoranda in support of

8   its motions to dismiss or transfer venue); H. Lin Decl. (docket no. 62 at 21-22) (appended

9   to Jinrong's motion to transfer venue).  The Court further concludes that, had Jinrong not

10   proffered Hui Lin's declaration, which concerns facts that were at issue in Jinrong's

11   motion for summary judgment, MacNeil would not have needed to depose her, and that

12   the appropriately "calibrated" sanction, in addition to not counting Ms. Lin's deposition

13   toward the ten (10) allotted by Rule 30(a)(2)(A)(i), is to award MacNeil the attorney's

14   fees, translator's costs, and other expenses associated with Hui Lin's deposition.  Within

15   twenty-one (21) days of the date of this Order, MacNeil shall file a declaration setting

16   forth the amounts at issue.  Any objection shall be filed within fourteen (14) days after

17   such declaration is filed.  No reply shall be filed unless requested by the Court.

18    One of the eleven additional depositions allowed to MacNeil is a substitute for

19   Hui Lin's deposition; the other ten are intended to give MacNeil a fresh set of depositions

20   permitted by Rule 30(a)(2)(A)(i).  Jinrong's argument, in its motion for summary

21   judgment, that the allegedly extraterritorial nature of its activities warranted dispositive

22   relief in its favor was contrary to both its operative pleading and Federal Circuit

23   jurisprudence.  Battling Jinrong's meritless motion required MacNeil to spend its entire

ORDER - 22

1   bank of depositions.  Considering the factors set forth in Rules 26(b)(1) and (2),[18] the

2   Court concludes that MacNeil is now entitled to conduct depositions related to the

3   substance of its claims, even though some overlap might exist with respect to the quasi-

4   jurisdictional issues raised in Jinrong's motion for summary judgment.

### iii.   Other Relief

6        MacNeil's alternative request that all declarations of, and discovery responses

7   verified by, Wei Wei be stricken is DENIED as both moot and not commensurate with

8   the alleged harm caused by any misrepresentations or inaccuracies in the materials at

9   issue.  MacNeil's proposal to require Jinrong to retain, at its sole expense, an independent

10  discovery consultant fluent in Chinese will not be adopted as a sanction against Jinrong,

11  but the Court will consider appointment of a master (the costs of which would be shared

12  equally by the parties) pursuant to Federal Rule of Civil Procedure 53(a)(1)(C).  The

13  parties shall meet and confer on the subject and file a Joint Status Report within twenty-

14  one (21) days of this Order reflecting their respective views.

---

[18] "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Limitations on "the frequency or extent of discovery otherwise allowed" are warranted if the discovery sought is "unreasonably cumulative or duplicative" or "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).  Jinrong argues that a deposition of Zhonghuang Yan would be cumulative of the depositions of Jinguo Lin, Wei Wei, Jie Peng (Shengtian's general manager), and Heng Lu (Jinrong's engineer in charge of mold technology).  Given the limited purpose for which MacNeil took earlier depositions, namely to respond to Jinrong's essentially premature motion for summary judgment, the Court is not persuaded that any deposition, let alone that of Jinrong's manufacturing department head, would be duplicative.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)　Jinrong's motion for leave to amend its answer, docket no. 133, is GRANTED, and Jinrong shall electronically file its amended answer within seven (7) days of the date of this Order.

(2)　Jinrong's motion for summary judgment, docket no. 91, is DENIED.  The Court has both subject matter and personal jurisdiction.

(3)　Jinrong's motion to strike, *see* Surreply, docket no. 184, arguments not raised in, and evidence not presented contemporaneously with, MacNeil's motion for sanctions, is GRANTED in part and DENIED in part; Jinrong's other motion to strike, *see* Reply, docket no. 177, is GRANTED in part and DENIED in part, *see supra* notes 5 & 6.

(4)　MacNeil's motion for sanctions, docket no. 125, is GRANTED in part and DENIED in part.  MacNeil shall file a declaration within twenty-one (21) days of the date of this Order concerning the attorney's fees, translator's costs, and other expenses it incurred in connection with the deposition of Hui Lin, which will be awarded against Jinrong as a sanction.  The other sanctions requested by MacNeil, including for entry of default judgment and to strike Mr. Wei's declarations and verified discovery responses, are denied.

(5)　The parties shall meet and confer and file a Joint Status Report within twenty-one (21) days of the date of this Order concerning whether the Court should appoint a Discovery Master fluent in both English and Chinese (Mandarin) pursuant to Federal Rule of Civil Procedure 53.

1    (6)    MacNeil's motion for leave to take additional depositions, docket no. 148,

2    is GRANTED.  MacNeil may take up to eleven (11) more depositions.

3    (7)    Claim construction and subsequent dates and deadlines in this matter will

4    not be set until after the IPR proceedings before the PTAB are resolved.  The parties may,

5    in the meanwhile, continue to conduct fact discovery.  On or before January 31, 2022, the

6    parties shall meet and confer and file a Joint Status Report concerning what discovery has

7    occurred and what, if any, discovery remains to be conducted, as well as whether the

8    PTAB has issued any decisions in the IPR matters and, if not, when it is anticipated to do

9    so.

10    (8)    The Clerk is directed to send a copy of this Order to all counsel of record.

11    IT IS SO ORDERED.

12    Dated this 19th day of August, 2021.

13

14

15    Thomas S. Zilly
      United States District Judge

16

17

18

19

20

21

22

23

ORDER - 25